1

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

3

4
NORMAN T. OLSON

5
    Plaintiff

6
      v.                                **CIVIL NO.   05-1837 (HL/GAG)**

7
VICTOR FAJARDO VELEZ, et. al.

8
    Defendants

9
**REPORT AND RECOMMENDATION**

10
**I.**    **Introduction**

11
    Plaintiff Norman T. Olson brings this Section 1983 suit seeking a preliminary injunction to

12
abort his pending criminal prosecution before the Commonwealth Court of First Instance, the trial

13
set to commence on October 17, 2005.  In his complaint (Docket No. 1), he alleges that the former

14
Attorney General of the Commonwealth of Puerto Rico, Anabelle Rodríguez Rodríguez,[1] along with

15
her then Chief Deputy and now General Prosecutor, Pedro G. Goyco Amador, and several

16
prosecutors of the Department of Justice, Sergio Rubio, Alberto Valcárcel and Arístides Cales

17
Fraticelli, initiated a bad faith prosecution against him, following the dismissal of the federal

18
criminal case in which he was accused.  Olson further alleges that three defendant-cooperating

19
witnesses from the federal case, Víctor Fajardo, José Omar Cruz, and Marta Santos, are witnesses

20
for the prosecution in the Commonwealth criminal proceeding.[2]   Plaintiff posits that,

21
notwithstanding the federal court's findings in the federal  criminal case that two of these federal

22
government defendant-cooperators testified falsely, the Commonwealth Attorney General and

23
prosecutors filed charges against him which are inconsistent with and ignore completely the federal

24
court's determinations.

25

26
    [1]  Rodríguez's successor, Roberto Sánchez Ramos, is also included as a defendant in this

27
action.

28
    [2]  Plaintiff has included as defendants in this action all the aforementioned Puerto Rico
Department of Justice officials, as well as the three purported cooperating witnesses.

**CIVIL  NO**.  **05-1837 (HL/GAG)**              2

Plaintiff Olson further contends that his pending bad faith prosecution in Commonwealth court is  politically motivated.  He alleges that contractors such as him, who did business with the Department of Education during the last New Progressive Party (NPP) administration, have been prosecuted.  Contrarywise,  Jesús Emilio Rivera Class, another contractor who had significant ties to the Popular Democratic Party (PDP) administration which appointed defendants, was questionably provided total immunity from prosecution by the Attorney General.

Recognizing that the abstention doctrine of <u>Younger v. Harris</u>, 401 U.S. 37 (1971), bars federal courts from enjoining ongoing state criminal proceedings, absent exceptional circumstances, Olson contends that the latter is the case here. He, thus, invokes the <u>Younger</u> "bad faith" exception. <u>See</u> <u>Dombrowski v. Pfister</u>, 380 U.S. 479, 489-490 (1965) (recognizing bad faith exception to federal court abstention); <u>Brooks v. New Hampshire Supreme Court</u>, 80 F. 3rd 633, 639 (1st Cir. 1996) (holding that though <u>Younger</u> requirements for abstention are satisfied, a federal court may nonetheless intervene to stop ongoing state judicial proceeding if the plaintiff demonstrates "bad faith, harassment or any other unusual circumstance"); <u>see also</u> <u>Shaw v. Garrison</u>, 467 F. 2d 113 (5th Cir. 1972) (finding that state prosecution brought in bad faith was properly enjoined).

On September 12-13, 2005, the Court held a show cause hearing in which the parties presented their arguments as to whether the <u>Younger</u> bad faith exception warranted the relief sought by plaintiff.  While the parties also submitted extensive documentary evidence, neither side presented any witness.[3]  The Court did call one witness, as will be discussed at Section III-E, *infra*. In addition, the plaintiff filed a Memorandum of Law in support of his motion for preliminary injunction (Docket No. 39) and defendants filed a Motion to Dismiss and in Opposition to Plaintiff's

---

[3] Plaintiff, prior to the hearing sought two emergency petitions for writ of *habeas corpus ad testificandum* to have defendants Fajardo and Cruz appear at the show cause hearing.  <u>See</u> Docket Nos. 26 and 27.  Both motions identically state at ¶ 5 that Cruz and Fajardo are parties to this litigation and *may* be a material witness to issues addressed at the show cause hearing.  The Court denied both motions without prejudice (Docket No. 28) as no compelling necessity for the writs was adduced by plaintiff at the time.  During the show cause hearing, plaintiff's counsel did not renew the *habeas* requests.  More so, when asked if plaintiff would call any witness, his counsel responded in the negative.

**CIVIL  NO.  05-1837 (HL/GAG)**                3

Motion (Docket No. 55).[4]   The Court, following the show cause hearing granted the parties additional time to file simultaneous summation briefs, which they did (Docket Nos. 77, 78 and 81).

## II.    Factual Background[5]

Plaintiff Olson is the owner and founder of National School Services of Puerto Rico (NSSPR), an Illinois corporation which provided numerous goods and services to the Puerto Rico Department of Education throughout the 1990s until 2002.  In January, 2002, a grand jury in the District of Puerto Rico indicted the former Commonwealth's Secretary of Education from 1994 to 2000, Víctor Fajardo, and sixteen other co-defendants in an eight count indictment charging that Olson and other Department of Education contractors conspired and paid Fajardo and his Associate Secretary, José Omar Cruz, kickbacks under economic fear in excess of $4.3 million in return for their contracts.  Defendants were also charged with money laundering.

Both Fajardo and Cruz entered into plea and cooperation agreements with the federal government.  They testified before the federal grand jury and provided considerable information to federal law enforcement authorities about their own delictive activities and those of others involved in the scheme.  In September, 2002, the federal trial of Olson and others commenced.  Fajardo was called by the Government as the first witness.  On the fifth day of his testimony, as he was being cross-examined, the federal prosecutor accused Fajardo of perjury and moved to revoke his bond.  The prosecutor also moved to dismiss the criminal case against Olson and other defendants with prejudice.  The district court granted the motion to dismiss and subsequently revoked Fajardo's bond.

During the federal trial, Fajardo initially testified that Olson and other contractors paid voluntary donations to the NPP in return for their contracts.  However, during cross-examination, he admitted that he and Cruz threatened the contractors with economic death if they refused to pay

---

[4]  Only those arguments raised by defendants concerning the Younger bad faith issue are addressed in this report.

[5]  These facts are in part reported in the First Circuit's opinion pertaining to the appeals filed by defendants Fajardo and Cruz.  See United States v. Cruz Mercado, 360 F. 3d 30 (1st Cir. 2004).

**CIVIL  NO**.  **05-1837 (HL/GAG)**          4

kickbacks.  During Fajardo's bail revocation hearing the prosecutor informed the Court that, had Fajardo told the Government about his economic death threats, Olson and the other contractors would likely not have been indicted.

At Fajardo's sentencing, the Court made a finding that Fajardo extorted money from the contractors, which included Olson.  See Fajardo's Sentencing Transcript in Criminal Case 02-42 (HL) at pages 27-29. Based on this finding, as well as other instances of providing false information to the prosecution during its investigation, the Court rejected Fajardo's plea agreement and sentenced him to twelve years and seven months incarceration — roughly the double of his expected sentence under the plea agreement.

During Cruz's sentencing, also on the same day as that of Fajardo, the Court also made findings that he obstructed justice during the federal criminal proceeding, and played the role of enforcer by threatening the contractors with economic death.  See Order of 1/21/03 (Docket No. 607) in Criminal Case No. 02-42 (HL).

Subsequent to the sentencing of Fajardo and Cruz, Marta Santos, NSSPR's former executive director, who had entered a guilty plea, moved to withdraw the same.  The federal Court, upon the government's concession as to said relief, granted the motion, and charges against Santos were also dismissed with prejudice.

In 2003, new charges were filed against Olson and several of the other former federal defendants, this time by Commonwealth law enforcement authorities.  Pursuant to Section 212 of the Puerto Rico Penal Code, Olson was charged with four counts of bribery.  Each charge describes the payments made to Fajardo as being voluntary.   These payments are based on some of the same payments that formed the basis for the federal criminal proceedings against Olson.

In 2004 a preliminary hearing was held before the Commonwealth Court of First Instance. Cruz, who entered into a plea and cooperation agreement with the Commonwealth, testified about the payments made by Olson and others.  Marta Santos, who received an immunity agreement from the Commonwealth, also testified about these payments.  Probable cause was found as to the four charges.

**CIVIL  NO**.  **05-1837 (HL/GAG)**        5

After the preliminary hearing, Olson argued to the local court in a motion to dismiss filed pursuant to P.R. R. Crim. P. 64(p) that it should defer to the federal court's findings pertainig to the involuntariness of the payments, and thus dismiss the charges.  The Court rejected the argument. Two interlocutory appeals to the Commonwealth Circuit Court of Appeals and Supreme Court, respectively,  were filed, and the argument was again rejected *sub silentio* by both Courts.

Subsequently, plaintiff filed the federal action now before this Court.

**III.    Discussion**

In the case at bar Olson does not question the applicability of the <u>Younger</u> abstention doctrine. He does, however, invoke its "bad faith" exception. <u>See generally</u> <u>Brooks</u>, 80 F. 3d at 69; <u>Rivera Schatz v. Rodríguez</u>, 310 F. Supp. 2d 405, 410-411 (D.P.R. 2004). His bad faith argument is two-fold.   First, he contends that, because of the federal court's findings, defendants are collaterally estopped for prosecuting him  before the Commonwealth court.   Although Olson recognizes that the governments of the Commonwealth of Puerto Rico and the United States are two separate sovereigns, he claims that the Due Process Clause of Article V to the Constitution, made applicable to the states by the Fourteenth  Amendment, bars the Commonwealth government from further prosecuting him.  As Olson himself puts it, defendants cannot prosecute him "based on a story they know is false".

Olson's second argument is that defendants' bad faith is politically motivated, as the PDP contractor involved in the federal case, Jesús Emilio Rivera Class, was given total immunity at the Commonwealth level.   Olson also raises an additional claim for declaratory relief concerning the Puerto Rico bribery statute.  He argues that the court in the Commonwealth criminal proceeding has construed the statute as one requiring general intent.  He asks this Court to declare as a matter of federal law that the same should be interpreted to require specific intent and that extortion is complete defense to the charges brought against him.  The Court shall address Olson's arguments *seriatim*.

**A.        The Dual Sovereign Doctrine and Due Process**

It is a bedrock principle of constitutional law that two separate sovereigns within our National Government can bring successive prosecutions for the same criminal acts without offending

**CIVIL NO. 05-1837 (HL/GAG)**          6

the Due Process of Law.  See Bartkus v. Illinois, 359 U.S. 121 (1959) (holding that Fourteenth Amendment Due Process right of defendant acquitted in federal court of robbery of federally insured savings and loan association was not violated by subsequent state prosecution based on same acts); see also Heath v. Alabama, 474 U.S. 82 (1985) (holding that successive prosecutions by another State for the same criminal conduct was not barred by the Double Jeopardy Clause); United States v. Angleton, 314 F. 3d 767 (5th Cir. 2002) (holding that state court acquittal of defendant for capital murder did not preclude subsequent federal prosecution for murder for hire, and recognizing that under Bartkus due process is not offended).

The Commonwealth of Puerto Rico is considered a separate sovereign for successive prosecution purposes due to Congress' delegation of powers to the territory's government.  See United States v. López Andino, 831 F. 2d 1164, 1167 - 1168 (1st cir. 1987), cert. denied, 486 U.S. 1034 (1988) (allowing federal conviction to stand, despite prior state conviction arising from same criminal conduct); see also United States v. Lara, 541 U.S. 193, 204 (2004) (noting that sovereignty of Commonwealth of Puerto Rico, a United States territory, is the result of Congressional delegation).

In view of the aforementioned applicable precedent, Olson's Due Process claim flatly fails.

**B.      The Dual Sovereign Doctrine and Collateral Estoppel**

The doctrine of collateral estoppel, also known as issue preclusion, generally prohibits relitigation between same parties of an issue of ultimate fact that has been determined by a valid and final judgment.  See Ashe v. Swenson, 397 U.S. 436, 443 (1970).  An unsuccessful criminal prosecution by a state or the federal government, however, will not collaterally estop the other sovereign from prosecuting an individual based on the same conduct, even when the state and federal offenses mirror each other.  See United States v. Angleton, 314 F. 3d 767, 776 (5th Cr. 2002) (noting that in Ashe the Court held that collateral estoppel is embodied in the Double Jeopardy Clause, and holding that federal government was not collaterally estopped from prosecuting defendant for same conduct following unsuccessful state prosecution); United States v. Ricks, 882 F. 2d 885, 889-890 (4th Cir. 1989) (holding that collateral estoppel did not bar federal prosecution

**CIVIL NO. 05-1837 (HL/GAG)**          7

following defendant's acquittal in State of Maryland prosecution); Garrison v. State, 2005 WL 1594258 * 4-5 (Tex. App. 2005) (holding that collateral estoppel did not bar subsequent state prosecution, where federal indictment was dismissed following request by federal prosecutor); State v. Mechtel, 499 N.W. 662, 664-667,176 Wis. 2d 87, 91-98 (1993) (holding that collateral estoppel did not bar subsequent state evidentiary hearing under Franks v. Delaware,[6] following a federal magistrate judge's determination that testimony at probable cause hearing contained intentional or reckless false statements or omissions which were material; although federal charges were dismissed upon motion by the U.S. Attorney, the State was not bound by said determinations).

In the case at bar, the collateral estoppel doctrine likewise does not preclude the Commonwealth Attorney General and prosecutors from charging Olson. Nor does it compel the local courts to accept the federal court's findings in Criminal Case 02-42 (HL), *no matter how factually correct and persuasive these may be*. Hence, the federal court's findings at bail revocation and sentencing hearings, as well as in Santos' plea withdrawal, that Fajardo and Cruz had extorted Olson and other contractors, cannot legally bind the Commonwealth of Puerto Rico, which is a separate sovereign.

### C.     Collateral Estoppel and Privity

In a gargantuan effort to maintain alive the collateral estoppel doctrine, Olson claims that the Commonwealth Attorney General and prosecutors are in privity with co-defendants Fajardo, Cruz and Santos. As such, the federal court's findings as to extortion made in relation to these defendants in criminal case 02-42 (HL) do bind the Commonwealth. To support his privity argument, Olson sustains that, because Fajardo, Cruz and Santos entered into plea agreements with the Commonwealth Government for purposes of the local prosecution, the Attorney General and prosecutors are in privity with them. See Olson's *Memorandum of Law* (Docket No. 39) at page 32. He also alleges, but presented no evidence in support, that representatives of the Attorney General were present in the federal courtroom during the times the findings as to extortion were made. Id..

---

[6] 438 U.S. 154 (1978) (allowing evidentiary hearings to determine whether affiant to search warrant affidavit knowingly and falsely represented crucial material facts).

**CIVIL NO. 05-1837 (HL/GAG)**          8

Further, he notes that the Attorney General and prosecutors requested and received information from the federal criminal proceeding. Id.. Finally, Olson contends that the Attorney General and prosecutors convinced Fajardo, Cruz and Santos to change their testimony before the Commonwealth Court. Id. at 33.

For a non-party, such as the Attorney General and prosecutors, to be in privity with a party to a criminal action, such as Fajardo, Cruz and Santos, the non-party must substantially control or be represented by the party so that the doctrine of collateral estoppel apply. See United States v. Bonilla Romero, 836 F. 2d 39, 43 (1st Cir. 1987); see also United States v. Pérez Pérez, 72 F. 3d 224, 226 (1st Cir. 1995). Where prosecutors from a state or federal jurisdiction are neither a party nor in privity with their counterparts in the other jurisdiction's proceedings, such requirement is not satisfied. Bonilla Romero, 836 F. 3d at 43-44.

Whether non-party privity lies in a given case is a fact-specific question. Bonilla Romero, supra at 43. For example, in Bonilla Romero, the Court noted that the defendant "present[ed] no evidence whatsoever that federal prosecutors were, or should have been, involved in any way in the local prosecution. There is no indication they provided assistance or advice to the local authorities or at any time even discussed the matter". 836 F. 2d at 44. Likewise, in State v. Mechtel, 499 N.W. 2d at 667, 176 Wis. 2d at 96-97, the Court noted that "There is no evidence that the state controlled the federal prosecution. There was no evidence that the state was represented by the federal prosecutor".

In the case at bar, there is no evidence of record whatsoever to the effect that Commonwealth authorities procured, initiated, assisted or oversaw the federal criminal prosecution. Nor is there evidence that the federal prosecutor was *de facto* representing the Commonwealth during the federal proceeding. E.g., Mechtel, supra. The mere fact that Commonwealth prosecutors may at times have been present in federal court as part of the public is, in and of itself, insufficient to even suggest any type of Commonwealth control or influence over the federal prosecution.

The fact that José Omar Cruz and Marta Santos testified for the Commonwealth at Olson's preliminary hearing which resulted in a finding of probable cause, and have respectively received

**CIVIL  NO**.  **05-1837 (HL/GAG)**              9

cooperation and immunity agreements, is also insufficient to establish privity.[7]  More so, *no*
*convincing evidence was presented by Olson to the Court to sustain his allegations that Cruz and*
*Santos conspired with the Attorney General and prosecutors, thereby agreeing to present false*
*testimony in stark contradiction of the federal court's findings as to extortion*.  The Court has
carefully reviewed these two witnesses' testimony before the Court of First Instance from the
preliminary hearing transcripts and  finds from the same that no concrete evidence of a conspiracy
to change testimony can even be inferred.   The fact that the testimony of Cruz and Santos differs
to and/or contradicts the federal court's findings, if at all, may strongly bear on the weight of the
prosecution's evidence at trial, but is not *per se* evidence of a conspiracy as plaintiff contends.

### D.    Judicial Bias by the Commonwealth Judiciary

In his complaint at ¶ ¶ 124 and 125, Olson launches a massive strike against the integrity
of the Commonwealth's judiciary to sustain his argument that defendants' constitutionally
prohibited conduct has been permitted to continue as the Commonwealth Court of First Instance,
Circuit Court of Appeals, and Supreme Court, have not dismissed the bribery charges filed against
him based on the federal court findings.[8]  This same argument has previously been rejected by the
Supreme Court within the Younger context.  See Huffman v. Pursue, Ltd.. 420 U.S. 592, 610 (1975)
(explaining that Article VI of the Unites States Constitution declares that "the Judges in every state
shall be bound" by the Federal Constitution, laws and treaties, and declining to formulate a rule on
the assumption that state judges will not be faithful to their constitutional responsibilities); see also
Jou v. Chang, 350 F. Supp. 2d. 862, 869 (D. Hawaii 2004) (same holding).  In the present case, aside

---

[7]   In response to Olson's allegation that Fajardo entered into a plea and cooperation
agreement with the Commonwealth and would be a witness at trial, counsel for the Attorney General
and prosecutors represented to the Court at the show cause hearing that Fajardo did not have a
cooperation and/or immunity agreement, nor would be called at trial as a witness during the
Commonwealth's case in chief.

[8]   No particular Commonwealth judge or judges are named defendants in the present action,
nor are mentioned in the complaint as being part of defendants' conspiracy.  Defendant Anabelle
Rodríguez Rodríguez is presently an Associate Justice of the Puerto Rico Supreme Court, however,
recused herself from participating in the decision to deny Olson's *certiorari* petition.

**CIVIL NO. 05-1837 (HL/GAG)**          10

from plaintiff's allegations, no evidence of record demonstrates the sort of judicial bias claimed by

him.  Any inconsistent ruling by the Commonwealth Courts to that of the federal Court is, hence,

insufficient to overcome <u>Younger</u>.

      **E.**      <u>**The Rivera Class Immunity: Evidence of Political Animus**</u>
                <u>**to Sustain the Claim of Bad Faith**</u>

Olson charges that Attorney General Rodríguez granted Jesús Emilio Rivera Class[9] immunity

because he was associated to the PDP, and just after one afternoon's interview with her.  Olson notes

that at Fajardo's sentencing hearing the federal court questioned the granting of said immunity:

> Also, he, Mr. Fajardo, took 1.4 million in cash from Emilio Rivera
> Class, and the testimony of the Grand Jury of Omar Cruz, that the
> one who made more cash was Emilio Rivera Class.
>
> Unfortunately, he, being one of the most culpable of the three,
> Fajardo, Omar and Rivera Class, got total immunity.  I don't know
> how or why.  That should be explained publicly; not in this
> jurisdiction, the local jurisdiction.  This was after giving information
> only on an afternoon.  He was not even given a plea agreement; just
> an immunity.

At the show cause hearing the Court inquired of plaintiff's counsel what evidence of record

demonstrated that Rivera Class was affiliated to the PDP.  None was pinpointed.  The Court

nonetheless noted that in a motion to dismiss the indictment in Criminal Case No. 02-42 (HL) based

on selective prosecution (Docket No. 362) Rivera Class asserted he was a PDP member who was

singled out by the federal government based on his political affiliation.  Notwithstanding, Olson has

not presented any evidence to this Court, either direct or circumstantial, to the effect that the

Attorney General and prosecutors knew Rivera Class personally, and further knew of his political

affiliation at the time of granting the immunity.  This is fatal to a Section 1983 claim based on

impermissible political motivation.  <u>Compare with</u>, <u>e.g.</u>, <u>González de Blasini v. Family Dept.</u>, 377

F. 3d 81, 85-86 (1st Cir. 2004) (holding that claim that defendants were aware of plaintiff's political

affiliation because she was a well-known NPP supporter in the community and held a trust position

with the NPP administration was legally insufficient, to establish that defendants were aware of her

affiliation; plaintiff failed to adduce any evidence that defendants knew her party affiliation).

---

[9] Rivera Class was also a defendant in the federal criminal case whose charges were
dismissed.

**CIVIL NO. 05-1837 (HL/GAG)**           11

Notwithstanding the above, based on the lack of any information as to Rivera Class' immunity, the Court ordered that his immunity agreement and accompanying documents be produced to the Court. The Attorney General complied, thus, providing the immunity agreement as well as an accompanying sworn statement, which the Court made part of the record in this case. This agreement dated December 18, 2001, is signed by Rivera Class, his counsel Harry Anduze Montaño, and Assistant prosecutor Felix Fumero Pugliessi, the then director of the Commonwealth Department of Justice's Public Integrity Division. Attorney General Rodríguez was not a signator to the same.

Attorney Fumero was called by the Court as a witness to testify about the circumstances surrounding the execution of the immunity agreement.[10]  He testified the following:

1.  He served as a prosecutor at the Department of Justice for nearly thirty years. He was appointed to office by three different governors, two of them from the NPP and one from the PDP. During the past PDP administration the Attorney General appointed him to the position of Director of the Public Integrity Division, which he occupied until his retirement in September, 2002.

2.  Approximately one week prior to December 18, 2001, Attorney General Rodríguez spoke to Fumero over the telephone and informed him that the attorney of an individual who was interested in providing information regarding the Fajardo investigation would be contacting him. At this time, Rodríguez did not inform Fumero of the name of the witness nor of his counsel.

3.  That same day, attorney Harry Anduze Montaño called Fumero. Both agreed to meet for an offer of proof. At this time Fumero was still unaware of the identity of Anduze's client.

4.  Two to three days later, Fumero meet with attorney Anduze. Counsel provided Fumero with copies of several RG Bank Manager's checks which were used in the Fajardo scheme. From these checks Fumero became aware that the witness was Rivera Class. This was the first time Fumero ever heard of Rivera Class.

5.  After further meetings with attorney Anduze and determining that the information Rivera Class provided and could further provide would be useful to prosecute Fajardo, Fumero met with Attorney General Rodríguez in person at her office to discuss the immunity matter. Although he had the authority to determine whether

---

[10] Prior to the 9/12/05 show cause hearing, plaintiff nor his counsel had never examined said immunity agreement. Because Fumero's participation in the same was previously unbeknownst to plaintiff, the Court decided to make Fumero available for questioning. At the hearing, the Court, rather than conduct itself his examination, permitted counsel for the parties to interrogate attorney Fumero.

**CIVIL  NO**. **05-1837 (HL/GAG)**          12

to grant the same or not, he consulted with Rodríguez because of the public importance of the Fajardo case.  Fumero's recommendation was that immunity be granted.  Rodríguez agreed.

6.   On December 18, 2001, Fumero met with Rivera Class and Anduze.  After a three hour interview, he proceeded to take a sworn statement from Rivera Class and entered into the immunity agreement with him.  Although Fumero at the time was aware of the ongoing federal Fajardo investigation, he did not consult his decision to grant immunity with federal prosecutors.

7.   The information provided by Rivera Class was key to the prosecution of Fajardo and others at the Commonwealth level.  Most important, it allowed the Commonwealth Government to successfully prosecute Fajardo, who was the most culpable player.  At the time Rivera Class was given immunity, he was the first witness who made himself available to cooperate.  Two other witnesses were later also given immunity.

Given the uncontradicted testimony of attorney Fumero, as well as the lack of any other evidence of record, highly probative of political motivation or preference as to Rivera Class by the higher echelon of the Department of Justice, the Court can reach but one conclusion in the case before it:  *Olson has not presented compelling evidence of an impermissible or political motive behind his Commonwealth prosecution so as to avoid Younger*.

*Again, the Court notes that it provided plaintiff the opportunity to present witnesses at the show cause hearing.  Plaintiff at no point called defendant Rodríguez to testify about the circumstances surrounding Rivera Class' immunity.  Nor did he call any witness to explain why Rivera Class' immunity has not to date been revoked, given evidence in the federal prosecutor's hands indicative that Rivera Class lied to Fumero at the time he was given immunity*.[11]

**F.    Judicial Interpretation of the Puerto Rico Bribery Statute's *Mens Rea Requirement***

Finally, Olson prays for a declaratory judgment by this Court ruling that under federal constitutional parameters, the Puerto Rico bribery statute be held to be a specific, rather than general, intent penal statute and that extortion is a complete defense to his bribery charges.   The Commonwealth courts, thus far, have rejected this argument by Olson.

---

[11]  Plaintiff, in his summation brief (Docket No. 77) at pages 12-19 expounds on these very matters, and presented alongwith new exhibits to support his theory.  He also now questions Fumero's credibility based on said exhibits.  Although such matters may indeed be relevant to Olson's bad faith prosecution claim, it is highly improper to bring them to the Court's attention at this belated time, when Fumero had been excused, and no further witnesses were called by the parties at the show cause hearing, both sides having rested.

**CIVIL NO. 05-1837 (HL/GAG)**          13

Plaintiff's request is unfounded.  Federal courts defer to state courts' interpretation of state penal statutes.  See cf. Bracheisen v. Mondragon, 833 F. 2d 238, 240 (10th Cir. 1987) (holding that a federal court in a *habeas corpus* proceeding should defer to a state court's interpretation of a state statute); Tarrant v. Ponte, 751 F. 2d 459, 465 (1st Cir. 1985) (holding that a federal court in a *habeas corpus* proceeding may not disregard the state court's interpretation of state law).  In addition, Due Process does not preclude a state or its courts from construing a state statute to provide a particular *mens rea* requirement.  See Montana v. Egelhoff, 518 U.S. 37, 56 (1996) (holding that States' decision to disallow consideration of a given element in the determination of a state penal statute's *mens rea* does not violate Due Process); Hoag v. State of New Jersey, 356 U.S. 464, 467 (1958) (holding that nothing  in the Due Process Clause prevents state courts from construing the State's penal statutes).

**IV.    Conclusion**

In his complaint, Olson brought forth a colorable, non-frivolous claim of bad faith prosecution.  *However, at the show cause hearing he failed to support the same with a strong evidentiary foundation, as is required.*  See Phelps v. Hamilton, 122 F. 3d 885, 889-890 (10th Cir. 1997) (holding that plaintiff has a heavy burden in overcoming bar of Younger abstention on bad faith grounds); Stewart v. Dameron, 460 F/ 2d 278, 279 (5th Cir. 1972) (same);  Smith v. Gribertz, 887 F. Supp. 583, 587 (S.D.N.Y.) 1995) (same).  For the foregoing reasons, the Court concludes that plaintiff's request for a preliminary injunction pursuant to Younger's bad faith exception must be **DENIED**.  "As required by our federalist system of governance [and by the United States Constitution], the Court [must] abstain from enjoining the criminal proceeding against [Olson] [allowing] his defense to be presented before the jury at the [upcoming] trial" Rivera-Schatz v. Rodríguez, 310 F. Supp. 2d 405, 411 (D.P.R. 2004).

The Court hereby advises defendants that the present ruling is strictly based on the evidence presented (*or lack thereof*) in this proceeding, which has been strictly limited to the Younger "bad faith" issue.  More so, as accepted by defendants at the show cause hearing, Olson is not precluded from raising and further developing any arguments and federal claims brought herein during his

**CIVIL  NO**. **05-1837 (HL/GAG)**          14

criminal trial before the Court of First Instance.

Under the provisions of 28 U.S.C. § 636 and Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court no later than **October 4, 2005**.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1ˢᵗ Cir. 1992).

**SO RECOMMENDED.**

In San Juan, Puerto Rico, this 26ᵗʰ day of September, 2005.


*S/ Gustavo A. Gelpí*

**GUSTAVO A. GELPI**
United States Magistrate-Judge